UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re
Stephen R. Voboril and
Ricca E. Voboril,
        Debtors.

Chapter 7
Case No. 16-23237-svk

Bruce A. Lanser, Trustee,
        Plaintiff,
v.

Adversary No. 16-2418

First Bank Financial Centre,
        Defendant.

**MEMORANDUM DECISION GRANTING MOTION FOR SUMMARY JUDGMENT**

This case involves the "strong arm powers" used to avoid transfers of a debtor's property that are not properly perfected under state law. *See* 11 U.S.C. § 544(a). The Chapter 7 Trustee, Bruce A. Lanser, is asserting these powers to avoid liens held by First Bank Financial Centre (the "Bank") on two pieces of property: (1) insurance renewal commissions due Stephen Voboril (the "Debtor") and (2) a promissory note payable to him. The Trustee has moved for summary judgment.

Summary judgment is appropriate if the pleadings and affidavits on file show there is no genuine dispute as to any material fact and the Trustee is entitled to judgment as a matter of law. *See* Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56; *Omega Healthcare Inv'rs, Inc. v. Res-Care, Inc.*, 475 F.3d 853, 857 (7th Cir. 2007). The Court views all facts and draws all inferences in the light most favorable to the Bank as the non-moving party. *Omega Healthcare Inv'rs, Inc.*, 475 F.3d at 857.

I. Avoidance of Bank's Interest in Renewal Commissions

The Debtor received commissions for selling insurance policies and other financial products. Even after he retired, the Debtor continued to earn commissions when customers renewed their policies. In June 2012, the Bank made a loan to Voboril Financial, LLC. The Debtor personally guaranteed the loan and executed a Collateral Assignment of Renewal Commissions on November 21, 2012 (the "Agreement"). (Docket No. 8-4.) The Agreement states it was "made and accepted as collateral security for the repayment of any indebtedness of [the Debtor] to [the Bank] existing or hereafter incurred."

Although the Agreement purports to grant the Bank "collateral security" in the renewal commissions, the Bank did not file a financing statement to perfect its security interest. The Trustee argues that the renewal commissions are "accounts" as defined by Article 9 of the Uniform Commercial Code ("UCC") and thus the Bank's failure to file a financing statement leaves the Bank's interest unperfected. But the Bank counters that a UCC exception applies and that the Agreement is actually an "assignment of a single account, payment intangible, or promissory note to an assignee in full or partial satisfaction of a preexisting indebtedness," making it unnecessary for the Bank to have filed a financing statement.[1] *See* Wis. Stat. § 409.109(4)(g).

In *Stephenson v. First Union Nat'l Bank (In re Berry)*, 189 B.R. 82, 87 (Bankr. D.S.C. 1995), the court identified a number of factors relevant to determining whether an assignment is an absolute transfer of ownership that falls outside Article 9 and its perfection requirements or a

---

[1] The Bank has apparently abandoned its defense that the Agreement qualified for an exception to Article 9 as an "assignment of a claim for wages, salary, or other compensation of an employee" pursuant to Wis. Stat. § 409.109(4)(c). Even if the Bank had developed the argument in its brief, the Trustee's contentions refuting this exception are persuasive.

2

grant of security that must be perfected.  Generally, an assignment of accounts creates a security interest where:  (1) the assignee retains a right to a deficiency on the debt; (2) the assignee acknowledges that his rights in the assigned property would be extinguished if the debt owed were to be paid through some other source; (3) the assignee must account to the assignor for any surplus received from the assignment over the amount of the debt; (4) the assignor's debt is not reduced on account of the assignment; or (5) the contract language itself expresses the intent that the assignment is only for security.

Under these factors, the Agreement in this case bears the hallmarks of a security agreement rather than an absolute assignment.  The complete title of the Agreement itself is "Collateral Assignment of Renewal Commissions (For use where payment to Assignee is to commence only after default and delivery of written notice)" suggesting that an absolute assignment was not contemplated by the parties.  Although the Agreement contains language stating that the Debtor "assigns" all right, title and interest in the commissions to the Bank, the Agreement also indicates that the purpose is to provide "collateral security" for the repayment of any of the Debtor's existing or future debts to the Bank.  Nothing in the Agreement states or implies that the assignment reduced or eliminated the debt.  The Debtor, rather than the Bank, continued to receive the renewal commissions unless and until the Bank notified the Debtor and his employer of a default:  "Assignor shall be entitled to receive the commissions assigned until default in required payment of the indebtedness hereby secured."  In fact, the Debtor continued to receive the commissions as of the petition date.  Finally, in the event the Debtor paid off the loan, the Bank's interest in the renewal commissions would terminate: "Upon repayment to Assignee of the indebtedness . . . the interest of Assignee in such commissions shall cease."

3

The Bank also argues that the loan almost immediately went into default status, converting the Agreement from one granting a security interest into an absolute assignment. There are at least two flaws in the Bank's argument. First, whether the parties intended the assignment of the renewal commissions as collateral security or an absolute assignment must be determined as of the inception of the Agreement, not when the loan enters default status. Second, and in any event, there is no evidence that the notice of default actually was received as is required to effectuate it.

The Court concludes that Article 9 governs the Agreement, and the assignment exception does not apply. Accordingly, under Wis. Stat. § 409.310, the Bank was required to file a financing statement to perfect its security interest in the renewal commissions. Having failed to do so, the Bank's security interest in the commissions is avoidable by the Trustee using his powers as a lien creditor. *See* Wis. Stat. § 409.317(1)(b).

## II. Avoidance of Bank's Interest in Promissory Note

In a separate transaction, the Debtor executed a commercial security agreement granting the Bank a security interest in collateral described as "Assignment of Spaulding Clinical Certificate Note in the original amount of $104,000.00 payable to Stephen R. Voboril." (Docket No. 8-5.) The Bank filed a financing statement in an attempt to perfect its security interest in the promissory note,[2] and the parties disagree about whether the financing statement complies with Article 9. Specifically, the Bank inserted the Debtor's name in the wrong box on the financing

---

[2] The parties agree that the note is an instrument and that a secured party may perfect a security interest in an instrument either by filing or possession. (Docket Nos. 1 at ¶ 27-29; 4 at ¶ 27-29; 8 at 13 n.5; 10 at 5); *see* Wis. Stat. §§ 409.102(Lm) (definition of instrument); 409.312(1) (security interest in an instrument may be perfected by filing); 409.313(1) (security interest in an instrument may be perfected through possession). It is undisputed that the Bank never took possession. (Docket Nos. 1 at ¶ 29; 4 at ¶ 29; 8 at 13 n.5.)

4

statement with the result that a search in accordance with the filing office's procedures would not reveal the financing statement.

The Department of Financial Institutions' filing office rules provide that a filing shall designate whether a name is the name of an individual or organization. Wis. Admin. Code DFI-CCS § 4.08. If the name is an individual name, the filing should designate the first, middle, and last name, as well as any suffix. *Id.* When requesting a lien search, one must specify whether the name to be searched is the name of an individual or the name of an organization, and the search results are generated by applying standardized search logic to the name presented. *See* Wis. Admin. Code DFI-CCS §§ 5.02(1), 5.04. The rules state the reason for the designation and specification of name type: the filing office stores the names of individual debtors in files that include only the names of individuals and not the names of organizations, and it stores the names of organizations in files that include only the names of organizations. Wis. Admin. Code DFI-CCS §§ 3.03(1), 3.04(1). In short, the filing office maintains two separate databases. The search logic the filing office applies depends on whether the name to be searched is an individual name or an organization name. Wis. Admin. Code DFI-CCS § 5.04(1).

In this case, the Bank put the Debtor's name in the wrong place on the financing statement. The Bank inserted the phrase "STEPHEN R. VOBORIL" as an organization name rather than as an individual name. (Docket No. 8-6.) When a filer designates a name as an organization, the filing office enters the name "exactly as set forth in the UCC document," even "if it appears that the name of an individual has been included in the field designated for an organization name." Wis. Admin. Code DFI-CCS § 4.08(1). A note specifically warns that "filers should be aware that the inclusion of names in an incorrect field or failures to transmit names accurately to the filing office may cause filings to be ineffective." *Id.* Following these

procedures, the filing office entered the Bank's financing statement into the database that contains the names of organizations. Consequently, a search request specifying the Debtor's name as the name of an individual debtor would not locate the Bank's financing statement. *See* Wis. Admin. Code DFI-CCS § 5.04(d).

Minor errors or omissions will not doom a financing statement under Wis. Stat. § 409.506(1). However, a financing statement is not effective if errors or omissions make it "seriously misleading." *Id.* A financing statement is seriously misleading if it "fails sufficiently to provide the name of the debtor in accordance with s. 409.503(1)," unless a search under the filing office's standard search logic using the correct name would disclose the financing statement. Wis. Stat. § 409.506(2), (3).

The Bank asserts that the financing statement adequately specifies the Debtor's name and thus is not seriously misleading. The Trustee counters that a searcher performing a search in the Debtor's name as an individual would not discover the financing statement and thus the financing statement is ineffective. Although the parties have uncovered no case law directly on point, commentators endorse the Trustee's position, and the Court accepts this view as the better-reasoned.

Section 409.506(3) creates a "safe harbor" that will save a financing statement containing an incorrect name if a searcher can nonetheless find it in the ordinary course of a search. The Bank correctly points out that the section does not explicitly say that a financing statement that does not satisfy the safe harbor is seriously misleading and ineffective. Commentators have called the statute ambiguous, but argue for a reading of the statute consistent with the Trustee's position here. Section 9-506 "does not say that financing statements that do not satisfy subsection (c)'s safe harbor are seriously misleading and therefore ineffective." 1 Barkley Clark

6

Case 16-02418-svk    Doc 12    Filed 03/17/17    Page 6 of 9

& Barbara Clark, The Law of Secured Transactions Under the Uniform Commercial Code § 2.09 (3d ed.) (quoting Robert L. Jordan et al., Secured Transactions in Personal Property 59 (2000)). This "leaves open the possibility that an error in the debtor's name does not render the financing statement seriously misleading, even if a search using the debtor's correct name and standard search logic would not turn up the statement." *Id.* "The UCC rule should have gone further and stated that filing in a name that would not be picked up by the filing officer's standard search logic is seriously misleading as a matter of law. We hope that the courts construe the statute that way." *Id.*

Other commentators express a similar sentiment:

> We suspect the opposite inference [in the safe harbor provision] is intended as well, namely that if the standard search logic (when instructed to use the correct name) fails to find a financing statement because the name is incorrect, that renders the financing statement not only noncompliant with 9-502 and 9-503 but also means that it fails "substantially" to satisfy the "requirements of this Part" under 9-506 and so is "seriously misleading."

4 James J. White, Robert S. Summers & Robert A. Hillman, Uniform Commercial Code § 31:32 at 275 (6th ed. 2015).

Under this inference, if a standard search using the correct name fails to discover a financing statement, the statement does not sufficiently "provide" the debtor's name. The financing statement is also seriously misleading because it does not substantially satisfy the requirements of Part 5.

Following the Wisconsin filing office rules, a filer must correctly designate a debtor as either an individual or an entity because that determines the name's database and the applicable search logic of the filing office. *See* Wis. Admin. Code DFI-CCS §§ 3.03(1), 3.04(1), 5.04(1). It follows that a financing statement does not sufficiently "provide" the debtor's name in accordance with Wis. Stat. §§ 409.502(1)(a) and 409.503 if it incorrectly designates the debtor's

7

name as an organization when the debtor is an individual. Such a financing statement would not "substantially" satisfy the requirements of Part 5 of Article 9 and would be seriously misleading and ineffective under Wis. Stat. § 409.506.

This construction comports with the policy behind the statute and its 2001 revision. The UCC "must be liberally construed and applied to promote its underlying purposes and policies," including simplifying, clarifying, and modernizing the law governing commercial transactions. Wis. Stat. § 401.103(1). Former Article 9 did not define the type of error or omission that rendered a financing statement "seriously misleading" and ineffective. Courts "implemented [a] 'reasonably diligent searcher' standard, a standard that required the reviewing court to determine, on a case-by-case basis, whether a hypothetical reasonable searcher would have been able to discover the non-conforming financing statement despite the error in a debtor's name." *In re John's Bean Farm of Homestead, Inc.*, 378 B.R. 385, 389 (Bankr. S.D. Fla. 2007); *see, e.g., In re Central Wisconsin Ag Supply, Inc.*, 36 B.R. 908, 912 (W.D. Wis. 1983) (applying rule that a name variance is a major error only if "a reasonably diligent researcher of the files would fail to note the existence of the financial statement filed under the incorrect name."). A primary purpose of the revision to Section 9-506 "was to replace the former reasonableness standard with a clearer standard based on the computerized search logic of the filing office." *John's Bean Farm*, 378 B.R. at 389. Official Comment 2 to § 409.506 states the revision was "designed to discourage the fanatical and impossibly refined reading of statutory requirements in which courts occasionally have indulged themselves."

The Bank, nonetheless, urges a reading of Wis. Stat. § 409.506 under which a designation of an individual name as an organization name sufficiently "provides" the debtor's name. But at its core, the purpose of filing a financing statement is to put the world on notice of a secured

party's interest. Here, a search of the individual Debtor's name would not have identified this security interest. Only if a searcher chose to request a second, convoluted search, using the individual Debtor's name as that of an organization, would the searcher have found the financing statement. As the Trustee points out, the logical extension of the Bank's argument is that a financing statement that "provides" the debtor's name in the field for identifying the secured creditor would meet the requirements of Article 9. The Court rejects this tortured reading of the statute and assault on the policy behind the UCC.

Since an ordinary course search of the Debtor's name would not reveal the financing statement, it was not effective to perfect the Bank's security interest in the promissory note. The Trustee can therefore use his strong arm powers as a judgment lien creditor to avoid the Bank's security interest.

The Trustee's motion for summary judgment is granted. The Court will enter a separate order.

Dated: March 17, 2017

By the Court:

Susan V. Kelley
Chief U.S. Bankruptcy Judge